IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMA FLANDERS SOMMERS           PLAINTIFF

v.      CIVIL NO. 10-5024

MICHAEL J. ASTRUE, Commissioner
Social Security Administration          DEFENDANT

**MEMORANDUM OPINION**

  Plaintiff, Jama Flanders Sommers, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background:**

  Plaintiff protectively filed her current application for DIB on August 2, 2007, alleging an inability to work since December 1, 1999, due to post traumatic stress disorder, insomnia, headaches, back pain and the inability to focus. (Tr. 136-138). For DIB purposes, Plaintiff maintained insured status through December 31, 2004. (Tr. 152). An administrative hearing was held on March 19, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 19-58).

  By written decision dated July 7, 2009, the ALJ found that during the relevant time period, December 1, 1999 through December 31, 2004, Plaintiff had an impairment or

combination of impairments that were severe. (Tr.66). Specifically, the ALJ found Plaintiff had the following severe impairments: disorder of the back, post-traumatic stress disorder, and a mood disorder. However, after reviewing all of the evidence presented, she determined that prior to the expiration of Plaintiff's insured status, Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 66). The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to:

> perform medium work as defined in 20 CFR 404.1567(c) except she could not do sustained driving. She could not climb scaffolds, ladders, or ropes. She could not work around unprotected heights, dangerous equipment, or machines. From a mental standpoint, she was able to perform non-complex routine repetitive work where superficial contact is incidental to work performed with the public and co-workers, complexity of tasks is learned and performed by rote with few variables and little judgment, and supervision is specific, direct and concrete.

(Tr. 67). With the help of a vocational expert, the ALJ determined that prior to December 31, 2004, Plaintiff could perform other work as an industrial/commercial cleaner, a kitchen helper, a housekeeper, and a poultry eviscerator. (Tr. 72).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 8, 2009. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8,9).

**II.    Evidence Presented:**

At an administrative hearing held before the ALJ on March 19, 2009, Plaintiff testified that she was fifty-four years of age and obtained a high school education. (Tr. 23). The record

reflects Plaintiff's past relevant work consists of work as a route sales delivery manager for a newspaper. (Tr. 33).

Prior to the relevant time period, Plaintiff sought treatment for mental impairments including depression. (Tr. 334-338, 355). In August of 1999, Plaintiff reported she was in a new relationship and feeling comfortable. (Tr. 334).

The pertinent medical evidence during the relevant time period of December 1, 1999, through December 31, 2004, reflects the following. Therapy notes from Dr. James Rogers dated January 11, 2000, report Plaintiff was married two months prior and that Plaintiff was seeing a marriage counselor. (Tr. 334, 355). Plaintiff reported she underwent surgery on December 9, 1999,[1] and almost died because she was given the wrong medication. Dr. Rogers noted that Plaintiff reported that she remembered the incident and that she felt as if she could not move yet she was awake. Dr. Rogers noted that Plaintiff may undergo Eye Movement Desensitization Reprocessing (EMDR).

Therapy notes dated February 1, 2000, reported Plaintiff saw Dr. Lagrone on that date and was encouraged to remain on the Celexa. (Tr. 274, 333, 356). Plaintiff reported she was not sleeping well and was tearful all the time. Plaintiff reported feeling very irritable and hopeless. Plaintiff was prescribed Ambien. Therapy notes indicate Plaintiff had been talking about her post-surgery trauma and that she frequently feared not being able to breathe. Therapy notes indicated Plaintiff was to start the preliminary stages of EMDR.

---

[1] At the administrative hearing in March of 2009, Plaintiff testified she underwent a mastoplexy which she described as "basically a breast lift/reduction." (Tr. 52).

AO72A
(Rev. 8/82)

Therapy notes dated March 2, 2000, reported that Plaintiff's medication was changed from Celexa to Zoloft. (Tr. 275, 332). Plaintiff was also prescribed a sleep medication. Dr. Rogers also noted Plaintiff's report that she was having increasing problems with her mother who had become increasingly disoriented. Plaintiff was encouraged to contact a social worker to ask about resource help. Plaintiff was noted as very tearful throughout the session. Dr. Rogers noted Plaintiff continued to experience severe PTSD symptoms.

Therapy notes dated March 29, 2000, report Plaintiff's mother had dementia. (Tr. 275, 332). Plaintiff was to begin EMDR therapy once her mother was placed in the nursing home.

Therapy notes dated April 14, 2000, report Plaintiff's mother was doing better. (Tr. 276, 331). Plaintiff started the EMDR therapy. Plaintiff feared not being able to breathe. Dr. Rogers noted Plaintiff was doing well with the therapy.

On June 8, 2000, Plaintiff entered the emergency room of Baptist Saint Anthony's Health Systems complaining of neck and middle back pain secondary to a motor vehicle accident. (Tr. 260-269). X-rays of Plaintiff's cervical spine were normal. (Tr. 269). Plaintiff was diagnosed with cervical muscle spasm. Plaintiff was sent home with Ibuprofen, Flexeril and Ativan. Plaintiff was to follow up with her local doctor as needed.

On June 27, 2000, Plaintiff was seen by Dr. Mary F. Burgesser who prescribed four weeks of physical therapy. (Tr. 279).

Therapy notes dated July 18, 2000, report Plaintiff was turned down by a lawyer regarding a malpractice case because post traumatic stress was the primary consequence of the alleged malpractice and would not likely end up with much of a settlement. (Tr. 277, 329).

AO72A
(Rev. 8/82)

Plaintiff was very upset because she had not been able to find an attorney to take her case.[2] Plaintiff also reported that she never saw her husband who just started a new job. Plaintiff reported stress at home. Dr. Rogers noted Plaintiff had started to work with her husband but had been unable to continue to work because of the car accident. Dr. Rogers indicated Plaintiff was emotionally overwhelmed and felt abandoned by her husband. Plaintiff reported she was no longer on antidepressants because she did not have insurance. Plaintiff wanted to look at her trauma and to learn to cope with overwhelming stressors and her anger with her husband. Plaintiff reported she could not work until she was released by a doctor.

The record reflects Plaintiff underwent physical therapy from August 4, 2000, through October 31, 2000. (Tr. 230-259). Notes dated August 4, 2000, report Plaintiff's complaints of neck strain. (Tr. 231). The discharge statement indicated that Plaintiff's goals were not assessed secondary to Plaintiff not being present at the last two therapy sessions. (Tr. 232).

On September 14, 2000, Plaintiff underwent a MRI of the brain. (Tr. 218). Dr. John N. Williams' conclusion stated "Negative MRI of the brain."

From October 17, 2000 through December 15, 2000, Plaintiff saw a chiropractor at Total Works Chiropractic for back, neck and shoulder pain and for headaches. (Tr. 220-226, 363, 365-369). Plaintiff was referred for therapy as a result of pain following a motor vehicle accident on June 8, 2000. Plaintiff received aqua therapy, heat packs and massage.

---

[2]At the administrative hearing, Plaintiff testified that she had to change her attorney due to her first attorney switching firms which in turn raised a conflict issue for that attorney. (Tr. 40). Plaintiff testified that she was awarded $12,000.00 but that she only received $650.00.

In a letter dated December 15, 2000, Dr. Burgesser indicated Plaintiff needed a Sundance Capri Spa as a medical necessity for hydrotherapy at home. (Tr. 281). Dr. Burgesser stated this would help Plaintiff relieve her cervical spine and muscle pain.

In a letter dated March 19, 2001, Dr. Burgesser stated that Plaintiff had required physical therapy, aqua therapy and chiropractic treatment to treat cervical spine pain and headaches. (Tr. 280).

In 2003, Plaintiff had a mammogram and had a CT of the paranasal sinuses. (Tr. 228-229).

Medical evidence, over twenty-one months after Plaintiff's insured status expired, dated September 26, 2006, through 2008, report Plaintiff sought treatment for major depression, anxiety, panic attacks, migraines, fibromyalgia and pain. (Tr. 281-311, 371-451).

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

AO72A
(Rev. 8/82)

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

**IV.     Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled prior to December 31, 2004, her date last insured. Defendant argues substantial evidence supports the ALJ's determination.

**A.     Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2004. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of December 1, 1999, her alleged onset date of disability, through December 31, 2004, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of Plaintiff's condition subsequent to the expiration of Plaintiff's insured status is relevant only to the extent it helps establish Plaintiff's condition before the expiration. Id. at 1169.

**B.     Subjective Complaints and Credibility Analysis:**

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including

evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff's contends that her impairments were disabling prior to the expiration of her insured status, the evidence of record does not support this conclusion.

As previously noted, the relevant time period in this case is December 1, 1999, through December 31, 2004. With regard to Plaintiff's neck and back pain, the ALJ pointed out that medical evidence reveals after Plaintiff's June of 2000 motor vehicle accident Plaintiff underwent only conservative treatment for cervical spine pain by way of physical therapy, aqua therapy and chiropractic treatment. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). It is also noteworthy that while Plaintiff alleges ongoing and consistent pain, there is not evidence that Plaintiff sought treatment for this alleged pain after March of 2001 until late in 2006, well after Plaintiff's date last insured. Based on the evidence of record,

AO72A
(Rev. 8/82)

the Court finds substantial evidence supporting the ALJ's determination that Plaintiff's neck and back pain were not of a disabling nature prior to December 31, 2004.

The record also reveals Plaintiff sought treatment for post traumatic stress and mood disorders during the relevant time period. The ALJ stated that while Plaintiff had sought mental health treatment prior to her date last insured, she had an active life prior to her date last insured. The ALJ noted Plaintiff reported she and her husband had sold their home in 2004, relocated to a town 350 miles away, and bought a replacement home.  The ALJ further noted that Plaintiff had been able to seek legal help for a malpractice lawsuit and to pursue her claim.  The record also reveals that Plaintiff had started to work as a cashier/hostess at a restaurant with her husband in May or June of 2000.  It also appears Plaintiff was helping to take care of her mother in late 1999 and early 2000 and helped get her mother established in a nursing home in early 2000. The medical evidence also reveals that Plaintiff had begun EMDR therapy to treat her post traumatic stress and was doing well in April of 2000.  Plaintiff did report feeling emotionally overwhelmed in July of 2000; however, Dr. Rogers noted Plaintiff's report that she had been involved in a car accident; that her husband had changed jobs and was home less; and that she had not been able to find an attorney to pursue her malpractice claim.  There is no evidence that Plaintiff sought further treatment with Dr. Rogers or any mental health professional between July of 2000 and  September of 2006, well after Plaintiff's date last insured.  The record clearly establishes Plaintiff's mental impairments were more severe in September of 2006; however, after reviewing the entire evidence of record, we find substantial evidence to support the ALJ's determination that Plaintiff's mental impairments were not disabling prior to December of 2004.

With regard to Plaintiff's obesity, Plaintiff did not allege obesity as an impairment when she applied for disability and did not testify at the hearing that her weight caused any more limitations. See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir.2003) (claim of obesity impairment waived on appeal where claimant did not raise any limitation from the impairment in his application or during hearing). Furthermore, these is no diagnosis of obesity prior to the expiration of her insured status.

Therefore, although it is clear that Plaintiff suffered with some degree of pain prior to December 31, 2004, she did not establish that she was unable to engage in any gainful activity prior to the expiration of her insured status. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.    RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20

-11-

C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when she determined Plaintiff could perform medium work with limitations prior to her date last insured. While the non-examining medical consultants found insufficient evidence to evaluate Plaintiff's abilities prior to her date last insured, a review of the medical evidence dated during the relevant time period does not indicated that Plaintiff's examining physicians placed any restrictions on her activities that would preclude performing the RFC determined prior to December 31, 2004. See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D. Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational

expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled prior to December 31, 2004, as she was able to perform other work as an industrial/commercial cleaner, a kitchen helper, a housekeeper, and a poultry eviscerator. See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### E.     Fully and Fairly Develop the Record:

Finally, we reject Plaintiff's contention that the ALJ failed to fully and fairly develop the record because she failed to send Plaintiff for consultative physical and mental examinations.

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

In the present case, there was no reason for the ALJ to send Plaintiff for the consultative examinations. Plaintiff's insured status expired on December 31, 2004. Plaintiff did not file her application for benefits until August of 2007. Having Plaintiff undergo consultative evaluations in 2007 or later would in no way show Plaintiff's capabilities prior to December of 2004. After

reviewing all the evidence of record, we find the ALJ had enough evidence to support her determination.

## V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 3rd day of March 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE